UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERSTATE REALTY MANAGEMENT COMPANY VOLUNTARY EMPLOYEE BENEFIT PLAN, an ERISA Qualified, Self-Funded Health Plan,<br><br>Plaintiff,<br><br>v.<br><br>SHELLY WOOD, an individual,<br><br>Defendant. | No. 2:18-cv-03038-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Interstate Realty Management Company Voluntary Employee Benefit Plan ("Plaintiff"), a self-funded employee group welfare plan ("Plan") governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA"), asserts a subrogation and/or reimbursement claim to recoup medical benefits it paid to Defendant Shelly Wood ("Defendant") under the Plan. In addition to seeking declaratory relief as to the rights and obligations of the parties under the Plan, Plaintiff also seeks equitable restitution to enforce its claim against settlement monies obtained by Defendant from a third party. Those proceeds were paid on behalf of a third party as a result of injuries sustained by Defendant in an accident. Plaintiff paid some $79,914.14 in treatment costs as a result of those injuries and seeks reimbursement accordingly.

1

Now before the Court is Defendant's Motion to Dismiss (ECF No. 5) the Second and Third Causes of Action of Plaintiff's Complaint, for injunctive relief and equitable restitution, accordingly. Defendant contends those claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6)[1] for failure to state a viable cause of action. According to Defendant, the terms of the Plan do not require her to pay anything more than $6,000 in out-of-pocket expenses and therefore precludes Plaintiff's restitution claim, as well as any claim that Defendant be enjoined from spending the funds she received in settlement of her injury claim. As set forth below, Defendant's Motion is DENIED.[2]

**BACKGROUND**

The facts of this matter are essentially undisputed. On or about August 10, 2013, Defendant was injured in an accident. Pursuant to the Plan, Plaintiff paid some $74,914.14 in medical expenses for treatment Defendant received for her injuries.

Defendant made a claim for money damages against the third party alleged to have been responsible for causing the accident, and the third party submitted that claim to its insurer, which ultimately resolved the claim by way of a monetary settlement. Plaintiff thereafter made a reimbursement claim against the settlement proceeds for an amount corresponding to the medical expenses it paid. Defendant's failure to satisfy that claim prompted Plaintiff to file the instant lawsuit.

Plaintiff's Plan contains the following provision with respect to reimbursement for benefits provided due to injuries caused by a liable third party:

///
///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument was not of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

> [I]f a **Covered Person** receives any payment from any **Responsible Party** or **Insurance Coverage** as a result of an injury, illness or condition, the plan has the right to recover from, and be reimbursed by, the **Covered Person** for all amounts the plan has paid and will pay as a result of that injury, illness or condition, from such payment, up to and including the full amount the **Covered Person** receives from any **Responsible Party**.

Plan, attached as Ex. A to the Decl. of Alan Laskin, ECF No. 5-2, p. 66.

There is no dispute that "Covered Person," as used in the Plan, refers to Defendant herein, that payment from a "responsible party" or "insurance coverage" implicates the monies Defendant received to settle her claims as a result of the accident in which she was injured. Plaintiff seeks recovery under this provision.

Defendant, on the other hand, claims that because the Plan requires that the member himself contribute a certain amount before the Plan itself begins to cover his or her needed medical services, that "out-of-pocket" contribution limits the Plan's reimbursement rights. The Plan provides:

> Once [the member] satisf[ies] any applicable **payment limit**, the plan will pay 100% of the **covered expenses** that apply toward the limits for the rest of the Plan Year. Certain designated out-of-pocket expenses may not apply to the **payment limit**. Refer to your *Schedule of Benefits* for information on what **covered expenses** do not apply to the **payment limits** and for the specific **payment limit** amounts that apply to your plan.

Id. at p. 12.

As set forth in the Plan's Summary of Benefits and Coverage ("SB&C," Ex. B. to the Laskin Decl.), the out-of-pocket payment limit required before the Plan kicks in to pay "covered expenses," is $6,000. Defendant points out that the SB&C discusses "designated out of pocket expenses that [do] not apply to the payment limits" in specifically providing that "premiums, balance-billing charges, [and] health care the plan doesn't cover" do not suffice in satisfying the out-of-pocket limit. See Def.'s Motion., ECF No. 5-1, 4:22-5:2. According to Defendant, because a member's reimbursement

///

3

obligations are not contained within this list of excluded items, the $6,000 out-of-pocket limitation must extend to any reimbursement claim.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &

Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**ANALYSIS**

Defendant argues that her out-of-pocket payment obligation limits any requirement that she reimburse the Plan for amounts received in settlement of injury claims, because the two provisions must necessarily be construed together. As Plaintiff points out, however, that contention hinges on the assumption that there is no difference between Defendant's obligation to make certain payments **before** Plan coverage kicks in and any obligation on her part to reimburse the Plan for expenses it covers **after** the out-of-pocket limit has been paid and coverage is triggered. The Court agrees with Plaintiff that the two requirements are not the same, and therefore finds the entire premise of Defendant's Motion to be misguided.

A review of the Plan's provisions indicates that the out-of-pocket limit relates to deductibles, copayments, and payment percentages that a member must pay as part of the Plan's cost sharing. Plan, Ex. A to Laskin Decl., pp. 9, 11. The reimbursement lien created by the Plan, on the other hand, relates to "the amounts the plan has paid and will pay as a result of that injury, . . ." and affords the plan a lien on any recovery "to the extent of benefits paid by the plan for the treatment of the illness, injury or condition for which the [third party] is liable." Id. at pp. 66-67. The out-of-pocket limit refers to the maximum amount the member must pay **before** the Plan's obligation to cover medical expenses begins. Conversely, the Plan's reimbursement provisions relate to the circumstances in which the member must reimburse the Plan **after** it does begin to pay

the member's medical bills.  Reimbursement to the Plan is not a charge that Defendant needed to pay out-of pocket before the Plan's obligation to pay for her treatment commenced.  The Plan's requirements pertaining to out-of pocket expenses and third-party reimbursement provisions are therefore unrelated.  As Plaintiff points out, they are found in completely different Parts of the plan, impose different obligations in different scenarios and have no bearing on each other.[3]

Whereas out-of-pocket requirements are part of the cost-sharing analysis upon which the Plan, as an insuring document, is premised, reimbursement provisions are designed to prevent a double recovery, since payment coming from a third party for injuries sustained by a Plan member is based, at least in part, on the same treatment expenses the Plan already paid for Defendant's benefit.[4]  Absent reimbursement, double recovery exists since Defendant would obtain both the benefit of the Plan's payment of her medical bills and be benefited again by the third-party tortfeasor's payment to her for those same bills.  The law has long recognized the propriety of insurance reimbursement provisions in preventing insureds from receiving such double recoveries for their damages.  See 21st Century Ins. Co. v. Superior Court, 47 Cal. 4th 511, 527 (2009); see also Helfend v. So. Cal. Rapid Transit Dist., 2 Cal. 3d 1, 11 n. 17 (1970).

Significantly, too, the Plan's reimbursement provisions are strengthened by policy language that give the Plan an equitable lien on any money the member receives from a

---

[3] Defendant's attempt to conflate the two provisions by citing to the Supreme Court's decisions in Montanile v. Board of Trustees of the Nat'l Elevator Industry Health Benefits Plan, 136 S. Ct. 651 (2016) is not persuasive.  According to Defendant, Montanile stands for the proposition that because the Plan's reimbursement rights do not arise until Defendant takes title to the settlement proceeds, the funds actually came "out-of-pocket" and should be treated accordingly.  Montanile, however, had nothing to do with the "out-of-pocket" provision involved here.  Instead, Montanile addressed the issue of whether a plan could recover from its member's general assets once it had already dissipated the funds received from settlement, and where no equitable lien on the settlement funds had been established.  Here, as set forth below, the Plan does establish the requisite equitable lien, and further imposed a constructive trust on the settlement proceeds.  As such, Montanile is clearly distinguishable from the present matter.

[4] Because the Plan's provisions for reimbursement after the Plan pays for medical care are separate and apart from the member's duty to incur out-of-pocket expense before the Plan has to start covering medical costs, Defendant cannot credibly argue that Plaintiff's failure to list reimbursement as an exception to expenditures qualifying for the out-of-pocket maximum precludes Plaintiff from now claiming reimbursement

6

third party who is responsible for their injuries. The Plan provides that when a member (or her attorney or other representative) receives settlement funds from a responsible third party, the member is to hold the funds in trust, and agrees to serve as a constructive trustee of those funds for the benefit of the Plan. Plan, Ex. A to Laskin Decl., p. 66. Because the monies are in a specific, identifiable fund that the member holds only in trust, this militates against any argument that Defendant actually took title to the funds from which she could conceivably have paid those funds "out-of-pocket" to the Plan. In addition, the amount subject to the equitable lien is the amount paid by the Plan for such sickness or injury, and the lien is not limited by the member's out-of-pocket expenses. Id.

Finally, and perhaps most importantly, Defendant's argument that the Plan's reimbursement provisions are subject to the member's out-of-pocket expense requirement has already been rejected by caselaw. In Aetna Life Ins. Co. ex rel. Lehman Bros. Holdings v. Kohler, No. C 11-0439 CW, 2011 WL 5321005 (N.D. Cal. Nov. 2, 2011), the Northern District recognized the difference between a Plan member's out-of-pocket expense requirement and the Plan's entitlement to reimbursement in finding that the out-of-pocket provisions did not prevent reimbursement. In Kohler, as here, the insurer sought reimbursement for medical expenses it paid on behalf of its members after the member was injured by a third party. Also like the present matter, in opposing reimbursement, the member raised the out-of-pocket maximum limit as a defense. The court dismissed any contention in that regard, which relied on policy language virtually identical to that present here. As Kohler explained:

> "Defendants also contend that Aetna should be precluded from [seeking reimbursement] because Aetna seeks to recover amounts in excess of the out-of-pocket maximums allowed per year pursuant to the [Plan].... However, the [Plan] states that the maximum amount Aetna may recover is the amount that the Plan paid for the covered person's medical treatment, not the out-of-pocket maximum, which is the maximum amount a covered person must pay for medical treatment himself before the Plan pays for the full cost of medical treatment."

///

Id. at * 8.  Just as Kohler rejected the above argument, which is virtually on all fours to that made here, so this Court rejects Defendant's position herein.  The entire rationale for Defendant's Motion therefore fails.

**CONCLUSION**

For all the above reasons, Defendant's Motion to Dismiss (ECF No. 5) is DENIED.

IT IS SO ORDERED.

Dated:  July 24, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE